UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

MICHIGAN GASOLINE TRADERS, INC.,     Case No. 11-32038-dof
     Chapter 11
     Debtor.     Hon. Daniel S. Opperman
_____/

RPF OIL COMPANY, INC.,

     Plaintiff/Counter-Defendant,

v.     Adversary Proceeding
     Case No. 11-3290-dof

MICHIGAN GASOLINE TRADERS, INC. and
MOONIS F. KHAN,

     Defendants/Counter-Plaintiffs, and

MICHIGAN GASOLINE TRADERS, INC.,

     Third Party Plaintiff,

v.

FAMCO SERVICES, INC.

     Third Party Defendant.
_____/

## OPINION REGARDING RPF OIL COMPANY, INC.'S MOTION TO REMAND AND FOR ABSTENTION

Before the Court is RPF Oil Company, Inc.'s ("RPF") "Motion to Remand and for Abstention" pursuant to 28 U.S.C. § 1452(b) and §§ 1334(c)(1) and (c)(2). Debtor Michigan Gasoline Traders, Inc. removed this action pursuant to Federal Rule of Bankruptcy Procedure 9027. RPF originally commenced this action in state court in Genesee County, Michigan. RPF timely moved for abstention and remand. Following a hearing on RPF's motion held on August 10, 2011, the Court took the matter under advisement.

1

<u>Statement of Jurisdiction</u>

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(c), 28 U.S.C. § 157, and E.D. Mich. LR 83.50. "The determination of whether to abstain is a core proceeding, pursuant to 28 U.S.C. § 157(b)(2)(A) . . . , in which this court may enter a final order." *Beneficial Nat'l Bank v. Best Reception Sys., Inc. (In re Best Reception Sys., Inc.)*, 220 B.R. 932, 941 (Bankr. E.D. Tenn. 1998) (citation omitted).

<u>Factual and Procedural Background</u>

Although the facts regarding the history of dealings between the various parties is not without dispute at this juncture of the proceeding, the Court makes the following factual findings from the parties' papers and arguments at the hearing. On September 29, 2006, FAMCO Services, Inc., an affiliated corporation of RPF, sold two gas stations to Khan Enterprises, L.L.C. The stations were located at 5050 Pierson Road, Mt. Morris, Michigan, and at 7518 Lapeer Road, Davidson, Michigan. While Khan Enterprises' sole shareholder, Defendant/Counter-Plaintiff/Third-Party Plaintiff Mr. Moonis Khan, is also the Debtor's sole shareholder, the Debtor was not a party to the purchase agreement. Included in the purchase agreement was an escrow agreement by which funds were to be deposited by another entity to pay for environmental remediation at the two stations. According to the Debtor, FAMCO did not fulfill its obligations under that part of the purchase agreement.

Also on September 29, 2006, the Debtor entered into a "Complete Contract for Sale (Branded)" ("Branding Agreement")[1] for the Pierson Road station. Under the Branding Agreement, the Debtor agreed to purchase a specified minimum amount of gasoline from RPF over 10 years and

---

[1] RPF states in its motion brief that branding agreements were entered into for both stations, pointing to its Exh. 3. However, Exh. 3 is only a branding agreement for Pierson Road. There is nothing in that agreement related to the Lapeer Road station.

2

to operate the station under the Shell brand for the duration of the Agreement. The Branding Agreement provided for liquidated damages in the event of a termination by RPF due to the Debtor's default.

In connection with the Branding Agreement, Mr. Khan executed a personal guarantee of the Debtor's performance of the Branding Agreement. Khan Enterprises also executed a second mortgage in favor of RPF on the Pierson Road station in the amount $500,000.00. According to the Debtor, it entered into an "informal indemnification agreement" with Khan Enterprises obligating it to reimburse Khan Enterprises for any liability arising from the purchase agreement. Khan Enterprises transferred the Pierson Road station[2] on March 11, 2011, to The Champions, L.L.C. via quit claim deed.

For several years the parties fulfilled their various obligations under the Branding Agreement without any disagreements. The Debtor and RPF each blame the other for the deterioration of the relationship. RPF claims the deterioration resulted from Debtor's alleged breaches of the Branding Agreement. RPF alleges the Debtor repeatedly failed to adhere to Shell's branding requirements at the Pierson Road station and failed anonymous inspections by Shell representatives. According to RPF, these failures caused Shell – not RPF – to threaten to "de-brand" the station. RPF claims the Debtor failed to rectify the breaches of Shell's branding requirements but instead removed the Shell trademarks and purchased its gasoline from another supplier. RPF further claims the Debtor's purchasing of gasoline from another supplier and the "de-branding" by Shell entitled RPF to terminate the Branding Agreement.

---

[2] The quit claim deed also includes the Lapeer Road station, but as noted above, the state law claims only address the Pierson Road station.

3

RPF filed suit against the Debtor and Mr. Khan in Genesee County Circuit Court in 2010.[3] RPF's four count complaint sought relief against the Debtor for breach of contract and liquidated damages based on the Branding Agreement. RPF sought a total of $442,299, plus interest, costs, and attorney's fees. Additionally, RPF sought equitable relief in the form of precluding the Debtor from operating the Pierson Road station as an unbranded station and utilizing a competing gasoline supplier. Lastly, RPF sought to enforce the personal guaranty executed by Mr. Khan.

The Debtor, in contrast, claims RPF failed to provide sufficient funds to cover the environmental remediation issues pursuant to the purchase agreement. The Debtor also claims RPF filled its gasoline tanks with the wrong type of fuel on two occasions, resulting in severe damage to the delivery truck of a major customer, United Parcel Service ("UPS"). The Debtor stated at the August 10, 2011, hearing that although it did not have a written long term contract with UPS at the time the incident occurred, UPS ceased doing business with the Debtor as a consequence and the Debtor lost a significant source of revenue. The Debtor further claims that RPF pressured it to upgrade its facilities and enter into a new credit card processing contract upon pain of "de-branding." When the Debtor did not comply with these demands, the Debtor claims RPF cut off its ability to process credit card payments. Believing RPF's actions amounted to a breach of both the purchase agreement and the Branding Agreement, the Debtor entered into an agreement with a competing gasoline supplier.

On August 10, 2010, the Debtor and Mr. Khan filed a six-count counter-complaint against RPF. Count I of counter complaint alleged RPF violated of Michigan's Uniform Commercial Code; Count II sought damages for RPF's alleged breach of the Branding Agreement; Count III alleged RPF violated Section 2804 of the Petroleum Marketing and Practices Act ("PMPA"), 15 U.S.C. §

---

[3] The exact date is unknown because RPF's state court complaint (Exh. 10) is undated.

4

2801, *et. seq*.; Count IV sought rescission of the purchase agreement between Khan Enterprises and RPF for RPF's alleged breaches; Count V alleged RPF tortiously interfered with Debtor's business expectations; and, lastly, Count VI alleged fraud and misrepresentation by RPF in connection with the purchase agreement and the environmental remediation agreement. The Debtor also filed a third-party complaint against FAMCO.

The Debtor filed its voluntary Chapter 11 petition on April 22, 2011. On June 14, 2011, the Debtor filed its removal notice pursuant to Federal Rule of Bankruptcy Procedure 9027(a)(2). Rule 9027 requires a removal notice to be filed within 90 days of the order for relief, thus the Debtor timely filed its notice. On June 24, 2011, RPF filed this motion, and the Court entered an order on July 5, 2011, setting a hearing on the motion and deadlines for the submission of briefs. The Debtor filed its objection to RPF's motion on July 20, 2011, and RPF replied on August 3, 2011.

<u>Discussion</u>

RPF argues this Court must abstain pursuant to 28 U.S.C. § 1334(c)(2) because the removed state court action is not a "core" proceeding. RPF characterizes the entire state court action as non-core on the basis that it has not filed a proof of claim and because it states it will waive any claim against the Debtor's estate. RPF also argues that even if the removed action is "core" the Court should still permissively abstain pursuant to 28 U.S.C. § 1334(c)(1) or equitably remand pursuant to 28 U.S.C. § 1452(b).

The Debtor opposes RPF's motion arguing the removed state court action is a "core" proceeding for several reasons. First, RPF is making a claim against the estate and therefore the removed actions involves the claims allowance process, 28 U.S.C. § 157(b)(2)(B). Second, the Debtor has filed counterclaims against RPF, invoking 28 U.S.C. § 157(b)(2)(C). Third, the Debtor alleges it may contend certain as yet unidentified transfers were fraudulent conveyances, pursuant

5

to 28 U.S.C. § 157(b)(2)(H). Finally, pursuant to 28 U.S.C. § 157(b)(2)(O), the Debtor contends the claims in the state action involve the debtor-creditor relationship. The Debtor also argues permissive abstention is not appropriate. RPF replies to the Debtor's opposition reiterating its argument that the removed action is non-core, thus mandatory abstention applies, and if it is "core" then permissive abstention is appropriate since the main parties in the action are non-debtors litigating state law claims.

To determine whether the Court is required to abstain or should permissively abstain the Court must first determine if it has jurisdiction over the claims in the removed action. If it does, the Court next needs to determine the extent of its jurisdiction over the claims. *Nationwide Roofing & Sheet Metal, Inc. v. Cincinnati Ins. Co. (In re Nationwide Roofing & Sheet Metal, Inc.)*, 130 B.R. 768, 772 (Bankr. S.D. Ohio 1991). "[I]n evaluating whether a matter is core or non-core for abstention purposes, it is necessary to separately scrutinize each cause of action and ground for relief in the complaint." *Smith Mechanical Contractors, Inc. v. Premier Hotel Dev. Grp. (In re Premier Hotel Dev. Grp.)*, 270 B.R. 243, 251 (Bankr. E.D. Tenn. 2001). Therefore, the Court will first analyze each claim separately to determine whether it is a "core claim," a claim, "related to" or an unrelated claim over which the Court lacks jurisdiction. Next, the Court will determine if the factors for mandatory abstention are present. Finally, the Court will consider whether it should exercise its discretion and permissively abstain from hearing any claims or equitably remand any claims.

**"Core" / Non-core determination**

The Court initially observes that both parties believe the removed state court action is either entirely "core" or non-"core". Neither party evaluates each claim individually to ascertain the extent of this Court's jurisdiction. As noted earlier, "'[e]ach claim within the same cause of action must be analyzed claim by claim and each alone must satisfy [the jurisdictional] test in order to be

considered a core proceeding." *In re Exide Technologies*, 544 F.3d 196, 206 (3d Cir. 2008) (citation omitted). "A single cause of action may include both core and non-core claims. The mere fact that a non-core claim is filed with a core claim will not mean the second claim becomes 'core.'" *Id.* (citing *Best Reception Sys.,* 220 B.R. at 947).

Pursuant to 28 U.S.C. § 157(a) and (b)(1), § 1334(b), and Local Rule 83.50, this Court has subject matter jurisdiction over "all cases under title 11[,]" "all civil proceedings arising under title 11," civil proceedings "arising in" a case under title 11, and civil proceedings "related to" a case under title 11. The first category simply refers to a debtor's petition. *In re Swain*, 437 B.R. 549, 553 (Bankr. E.D. Mich. 2010) (citation omitted). The second category "describes those proceedings that involve a cause of action created or determined by a statutory provision of title 11," *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1144 (6th Cir. 1991) (citation omitted), such as a fraudulent conveyance action brought pursuant to 11 U.S.C. § 548. The third category, proceedings "arising in" a case under title 11, are proceedings "that, by their very nature, could arise only in bankruptcy" or "could [not] exist outside of the bankruptcy[.]" *Id.* (citations omitted). Remand and abstention motions fall into this category. *Bavelis v. Doukas, et al (In re Bavelis)*, 453 B.R. 832 (Bankr. S.D. Ohio 20110. The second and third "categories of civil proceedings are 'core' proceedings within the meaning of 28 U.S.C. §§ 157(b)(1) and 157(b)(2)." *Swain*, 437 B.R. at 553-54 (citation omitted).

The final category involves civil proceedings that are "related to" a case under Title 11. The well-established and "usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Wolverine Radio*, 930 F.2d at 1142 (quoting *Pacor, Inc. v. Higgins (In re Pacor, Inc.)*, 743 F.2d 984, 994 (3d Cir.1984)). "An action is related to

7

bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.'" *Id.* "Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *Id.* "[S]uch 'related to' proceedings include even 'suits between third parties which have an effect on the bankruptcy estate.'" *Swain*, 437 B.R. at 554 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 115 S. Ct. 1493, 131 L.Ed.2d 403 (1995)). The outer limits of "related to" jurisdiction is "'where there is an extremely tenuous connection to the estate.'" *Id.* (quoting *Wolverine Radio*, 930 F.2d at 1142).

RPF's state court complaint includes four counts. Counts I and III seek breach of contract and liquidated damages along with attorney's fees for the Debtor's alleged breach of the Branding Agreement. Count II seeks to hold Mr. Khan liable under his personal guaranty of MGT's obligations. Lastly, Count IV seeks equitable relief against the Debtor to prevent it and Mr. Khan from operating the Pierson Road station as an unbranded station and obtaining gasoline from other suppliers.

Except for Count II, RPF's claims all seek damages or relief against the Debtor. In particular, Counts I and III each seek $442,299.00 in damages from the Debtor. RPF emphasizes, however, that it has not filed a proof of claim against the Debtor's estate and vigorously asserts that it is making no claim against the assets of the estate. RPF states that it would "formally waive" any claim against the estate.[4] The Debtor, in contrast, views RPF's request for liquidated and breach of contract damages as "neither negligible nor insignificant" claims on its estate. In essence, the Debtor views RPF's claims as invoking the claims allowance process, which is "core" proceeding

---

[4] RPF filed a Proof of Claim on September 20, 2011, but has indicated it will withdraw this Proof of Claim in the event this Court remands this case.

8

pursuant to 28 U.S.C. § 157(b)(2)(B).

The Court finds that Counts I and III of RPF's complaint are not "core" proceedings because the Proof of Claim filed by RPF will be withdrawn on remand. The Court makes this finding despite RPF's inconsistency in seeking damages against Debtor in state court and then asserting here that it is not seeking recovery from the Debtor's estate, even though it filed a Proof of Claim. The conditional language placed on the Proof of Claim is sufficient evidence that RPF did not intend to seek recovery against the Debtor or the Debtor's estate. Moreover, the time constraints placed on RPF to file a Proof of Claim or else face an objection for an untimely Proof of Claim should not be construed to allow this Court to find jurisdiction when jurisdiction did not exist otherwise. Furthermore, to find that RPF's breach of contract is "core" would go against binding Supreme Court precedent. "To hold that [a] breach of contract action is core would directly contravene [*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S. Ct. 2858, 73 L.Ed.2d 598 (1982),] and impermissibly result in an Article I Court finally adjudicating rights traditionally cognizable in Article III Courts." *Marshall v. Michigan Dept. of Agric. (In re Marshall)*, 118 B.R. 954, 963 (W.D. Mich.1990). Thus, the Court holds that RPF's claims for liquidated damages and breach of contract are non-core proceedings.

Turning to Count IV of RPF's state court complaint, RPF alleges the Debtor tortiously interfered with RPF's business relationships and the Debtor willfully divulged confidential information in violation of the Branding Agreement. RPF seeks equitable relief in the form of a protective order restraining the Debtor (and Mr. Khan) from operating the Pierson Road station as an "unbranded gas station." The Court finds that this claim does not expressly fit into one of the many examples of "core" proceedings listed in 28 U.S.C. § 157(b)(2). While it arguably involves the administration of the estate, it is undisputed that Mr. Khan no longer has title to the Pierson Road

station and there is nothing in the record showing that the Debtor continues to operate the station. This claim is therefore moot. It is conceivable that such equitable relief would impact the estate, for example by limiting the Debtor's options or freedom of action as to what supplier it contracts with, but there is no evidence before the Court at this time that the allegations made by RPF apply to the only station the Debtor currently operates. The Court holds RPF's Count IV is not a "core" proceeding.

Finally, Count II of RPF's state count complaint seeks to hold Mr. Khan liable under a personal guaranty for the Debtor's alleged breaches of the Branding Agreement. According to RPF, this is the only claim it means to prosecute because it disavows any "inten[t] to pursue [the Debtor's] assets." RPF does not assert that any subsection of 28 U.S.C. § 157(b)(2) fits this claim. The Court also finds likewise. This claim is strictly a state law claim between two non-debtors. "Generally, a suit between two non-debtors does not qualify as a core proceeding under 28 U.S.C. § 157(b)." *Premier Hotel Dev. Grp.*, 270 B.R. at 252 (citation omitted). Therefore, the Court holds Count II is not a "core" proceeding.

The Court now turns to the Debtor's counter-complaint, which includes six counts: Count I, alleging RPF violated Michigan's Uniform Commercial Code; Count II, seeking damages against RPF for its RPF's alleged breach of the Branding Agreement; Count III, alleging RPF violated the PMPA; Count IV, seeking rescission of the purchase agreement for the Pierson Road station; Count V, alleging RPF tortuously interfered with the Debtor's business expectations; and Count VI, alleging RPF made fraudulent statements in connection with the environmental remediation aspect of the Pierson Road station purchase agreement. The Debtor asserts its claims are all "core" proceedings.

The Court finds that the only possible "core" claim is Count II, which is a counter-claim

against RPF seeking damages for the alleged breach of the Branding Agreement. The Debtor alleges RPF twice supplied it with the wrong type of fuel resulting in damage to the truck of a major customer and the concomitant loss of revenue. The Debtor contends that this claim is "core" pursuant to 28 U.S.C. § 157(b)(2)(C), as a counter-claim against a creditor filing a claim against the Debtor's estate. However, because the Court has already held that RPF's liquidated damages and breach of contract claims are not claims against the Debtor's estate, Debtor's counter-claim cannot be a "core" proceeding.

The remainder of the Debtor's counterclaims are also not "core" proceedings. None "involve a cause of action created or determined by a statutory provision of title 11" so as to "aris[e] under title 11[.]" Nor are they proceedings "that, by their very nature, could arise only in bankruptcy" or "could [not] exist outside of the bankruptcy[.]" They are state law claims that clearly could be brought by the Debtor outside of bankruptcy or assert a violation of a federal statute other than the Bankruptcy Code. The claims also do not come under any of the illustrative "core" proceedings listed in 28 U.S.C. § 157(b)(2). "[T]he possibility that the Debtor might prevail on the [remaining claims] and thereby generate 'a greater amount of assets to distribute to [its] creditors' . . . is not a sufficient basis to make the Court's jurisdiction core under 28 U.S.C. § 157(b)(2)(A) or (O)." *Bavelis*, 453 B.R. at 857 (citation omitted). Therefore, the Court holds that none of the Debtor's counter-claims asserted against RPF are "core" proceedings.

Next, the Court must determine whether any of the non-core claims asserted by either RPF or the Debtor are "related to" the main bankruptcy case. This is because if any claims "are non-core and unrelated, abstention is not at issue. The court cannot hear these proceedings." *Best Reception Sys., Inc.*, 220 B.R. at 943 (citation omitted). The key inquiry is whether the non-core claims "could conceivably have any effect on the estate being administered in bankruptcy." *Wolverine Radio*, 930

F.2d at 1142.

With respect to RPF's state court complaint, RPF's claims could conceivably have an effect on the Debtor's estate because, if successful, RPF would have a significant judgment against the Debtor, notwithstanding RPF's assertions that it is not seeking any of the Debtor's assets. Therefore, these "are non-core proceedings that are related to the Debtor's bankruptcy case." *Best Reception Sys.*, 220 B.R. at 950.

Next, Count II of RPF's complaint seeks to hold Mr. Khan liable under a personal guaranty for the Debtor's alleged breach of the Branding Agreement. A "related to" claim can include suits between third parties, but the claim must still have a conceivable effect on the Debtor's estate. The conceivable effect this claim could have on the Debtor's estate is a possible claim by Mr. Khan for common-law indemnification if he is found liable on the guaranty he executed in favor of the Debtor. Under Michigan law, "common-law indemnification [is] the equitable right to restitution of a party held liable for another's wrongdoing." *North Cmty. Healthcare, Inc. v. Telford*, 219 Mich. App. 225, 228-29, 556 N.W.2d 180, 182 (Mich. Ct. App.1996) (citations omitted). However, "reported decisions are divided as to whether the bankruptcy court has jurisdiction over . . . a creditor's attempt to collect the debtor's obligation to it from a guarantor . . . ." *Boyer v. Simon* (*In re Fort Wayne Telsat, Inc.*), 403 B.R. 590, 595 (Bankr. N.D. Ind. 2009). "Some [courts] find jurisdiction lacking[,]"while "[o]thers conclude that it exists." *Id.* (collecting cases). Courts have held that where the guaranty at issue is between non-debtors, simply "guaranteeing a separate contract between [the creditor] and a [debtor] that is now in bankruptcy does not automatically bring th[e] suit within the jurisdiction of the Bankruptcy Court." *Schumacher v. White*, 429 B.R. 400, 406 (E.D.N.Y. 2010). Thus, where there is "no contractual right to indemnification," the mere possibility that at some future time a common-law indemnification claim might be made does not

bring the claim against the guarantor within the "related to" jurisdiction of the bankruptcy court. *In re North Am. Refractories Co.* 280 B.R. 356, 361 (Bankr. W.D. Pa. 2002). As stated by the *North American Refractories* Court, it is "only when and if [a guarantor] suffer[s] adverse judgment in state court" that "there will exist the possibility that [the guarantor] will have a claim against" a debtor. *Id.* "Until then, the speculation proffered does not rise to the level of a 'conceivable effect' on" the debtor's estate. *Id.* at 362. Likewise, at this time, there is only the mere possibility that Mr. Khan will suffer an adverse judgment and be forced to make a payment to RPF on the Debtor's behalf. The speculative nature of that common-law indemnification claim will not have any conceivable effect on the Debtor's estate. Therefore, Count II of RPF's complaint is not "related to" the Debtor's case, and this Court lacks jurisdiction over that claim.

A similar finding applies to RPF's request for equitable relief (Count IV). As discussed earlier, it is not disputed that the Debtor no longer operates the Pierson Road station. This claim can have no conceivable effect on the Debtor's estate. The Court therefore lacks "related to" jurisdiction over this claim.

Regarding the Debtor's counter complaint, the Court finds that several non-core claims are "related to" its bankruptcy case. Specifically, Count I, alleging RPF violated Michigan's Uniform Commercial Code; Count II, alleging RPF breached the Branding Agreement; Count III, alleging RPF violated the PMPA; and Count V, alleging RPF tortuously interfered with the Debtor's business expectations. These claims conceivably could have an effect on the Debtor's estate because any damages awarded in favor of the Debtor would increase the amount available to creditors. Where a successful claim against a non-debtor augments the estate and thereby increases "[t]he ultimate distribution to creditors of the bankruptcy estate," this comes within the purview of the Court's "related to" jurisdiction. *Allard v. Coenen (In re Trans-Indus., Inc.)*, 419 B.R. 21, 33 (Bankr. E.D.

Mich. 2009). While the Court offers no opinion on the Debtor's potential to recover funds, the Sixth Circuit has emphasized that "'automatic' liability is not a prerequisite for a finding of 'related to' jurisdiction." *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers (In re Dow Corning)*, 86 F.3d 482, 491 (6th Cir. 1996). "[T]he key word in the test is 'conceivable.' Certainty, or even likelihood, is not a requirement." *Id*. (citation omitted). Because Counts I, II, III, and V of the Debtor's counter-complaint could have a conceivable effect on its estate, the Court has "related to" jurisdiction over these claims.

Finally, the Court finds that it lacks jurisdiction over Counts IV and VI of the Debtor's counter-complaint. Count IV purports to seek rescission of the purchase agreement between Khan Enterprises and RPF. Count VI alleges fraud and misrepresentation in connection with the purchase agreement. However, according to the record presently before the Court, neither the Debtor or Mr. Khan were parties to the purchase agreement. The most critical point is that the Debtor was not a party to the purchase agreement. To the extent Mr. Khan has standing to bring the claims, a determination of which this Court offers no opinion, they are wholly unrelated to the Debtor's bankruptcy case and will not have any conceivable effect on the Debtor's estate. *Wolverine Radio*, 930 F.2d at 1142.

In summary, the Court holds that RPF's Count II and IV along with the Debtor's Counts IV and VI are all non-core and unrelated to the Debtor's case. For claims that "are non-core and unrelated, abstention is not at issue. The court cannot hear these proceedings." *Best Reception Sys., Inc.*, 220 B.R. at 943 (citation omitted). Because the Court lacks jurisdiction over these Counts, the Court will remand these unrelated claims pursuant to 28 U.S.C. § 1452(b) as opposed to dismissing for lack of jurisdiction. *Id*. at 958 (court remands claims "over which [the court] does not have jurisdiction").

14

The Court further holds that RPF's Counts I and III as well as Debtor's Counts I, II, III, and V, while all non-core, are all "related to" proceedings. The Court will next analyze whether it must abstain from exercising jurisdiction over these "related to" claims.

**Mandatory Abstention**

Section 1334(c)(2) of Title 28 requires this Court to abstain if certain factors are present. "'[F]or mandatory abstention to apply, a proceeding must: (1) be based on a state law claim or cause of action; (2) lack a federal jurisdictional basis absent the bankruptcy; (3) be commenced in a state forum of appropriate jurisdiction; (4) be capable of timely adjudication; and (5) be a non-core proceeding.'" *Lowenbraun v. Canary (In re Lowenbraun)*, 453 F.3d 314, 320 (6th Cir. 2006) (quoting *Lindsey*, 86 F.3d at 497). In addition, 28 U.S.C. § 1334(c)(2) requires that the motion for remand to timely filed. *Kmart Creditor Trust v. Conaway (In re Kmart Corp.)*, 307 B.R. 586, 590 (Bankr. E.D. Mich. 2004). "The party seeking mandatory abstention bears the burden of demonstrating that each of the requirements are satisfied." *Parret v. Bank One, N.A. (In re Nat'l Century Fin. Enter., Inc., Inv. Litigation)*, 323 F. Supp. 2d 861, 881 (S.D. Ohio 2004) (citations omitted). As the party seeking mandatory abstention, RPF's "failure to satisfy even one factor will be fatal" to its request. *In re Dreier,* 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010).

From the Court's earlier analysis, mandatory abstention may apply to Counts I and III of RPF's complaint as well as Counts I, II, III, and V of the Debtor's counter-complaint. This is because these claims meet the fifth mandatory abstention factor. That is, they are non-core claims over which this Court has "related to" jurisdiction. The Court next must determine whether the remaining abstention factors are met for each claim at issue.

Regarding Count III of the Debtor's counter-complaint, seeking relief under a federal statute, the PMPA, the "mandatory abstention provision does not apply because . . . the proceeding does not

lack a federal jurisdictional basis." *McDaniel v. ABN Amro Mortg. Group*, 364 B.R. 644, 649 (S.D. Ohio 2007) (where debtor-plaintiff's only claim was for relief under the Home Ownership Equity Protection Act, 15 U.S.C. § 1639). The Debtor's PMPA claim presents a federal question. The term "proceeding," while it often refers to the main bankruptcy case or an adversary action, "must refer to each cause of action or right of recovery pled. This is the only interpretation which would adequately heed the Constitutional concerns in [*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.3d.2d 598 (1982)]." *Best Reception Sys.*, 220 B.R. at 945 (citation omitted). Because the Debtor's PMPA claim does not lack a federal jurisdictional basis, the second factor is not met. RPF's failure to satisfy this factor is fatal to its request. Therefore, mandatory abstention does not apply to Count III of the Debtor's counter-complaint.

As to the remaining Counts, the Court finds that all the other mandatory abstention factors are met. RPF timely filed its motion for abstention or remand, and the Debtor's counter-claims are based on state law, Michigan's UCC statute, and a common-law claim for tortious interference. The Counts further lack a federal jurisdictional basis absent the Debtor's bankruptcy, and the claims clearly were commenced in state court. Lastly, the Court finds that the claims are capable of timely adjudication by the state court. With respect to this factor, "[t]he underlying concern is whether allowing the state court action to proceed will have unfavorable effects on the pending bankruptcy." *York v. Bank of America, N.A. (In re York)*, 291 B.R. 806, 816 (Bankr. E.D. Tenn. 2003) (citation omitted). While there is a slight disagreement between the parties as to the state court's ability to timely adjudicate, the Court finds that from the record presently before it, the state court can indeed timely adjudicate the claims such that there will be no unfavorable effects on this case.

Accordingly, pursuant to 28 U.S.C. § 1334(c)(2) the Court must mandatorily abstain from exercising jurisdiction over Debtor's UCC (Count I), breach of contract (Count II), and tortious

16

inference (Count V) claims. The Court must also mandatorily abstain from hearing RPF's breach

of contract (Count I) and liquidated damages (Count III) claims. However, because the Debtor's

claim alleging RPF violated the PMPA (Count III) presents a federal question, it has a jurisdictional

basis other than the Bankruptcy Code, and mandatory abstention does not apply to that claim. The

Court now turns to whether it will permissively abstain from exercising jurisdiction over the

Debtor's PMPA claim.

## Permissive Abstention

Section 1334(c)(1) of title 28 permits this Court to abstain "in the interest of justice, or in

the interest of comity with State courts or respect for state law." "Under the permissive abstention

doctrine, federal courts have broad discretion to abstain from hearing state law claims whenever

appropriate in the interest of justice, or in the interest of comity with state courts or respect for state

law." *Thermoview Indus., Inc. v. Clemmens (In re Thermoview Indus., Inc.)*, 339 B.R. 417, 419

(Bankr. W.D. Ky. 2006) (citation omitted).

Courts consider the following factors when determining whether to abstain under section

1334(c)(1):

> 1. the effect or lack of effect on the efficient administration of the estate if a court
> abstains;
> 2. the extent to which state law issues predominate over bankruptcy issues;
> 3. the difficulty or unsettled nature of the applicable state law;
> 4. the presence of a related proceeding commenced in state court or other
> non-bankruptcy court;
> 5. the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
> 6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy
> case;
> 7. the substance rather than form of an asserted core proceeding;
> 8. the feasibility of severing state law claims from core bankruptcy matters to allow
> judgments to be entered in state court with enforcement left to the bankruptcy court;
> 9. the burden of this court's docket;
> 10. the likelihood that the commencement of the proceeding in bankruptcy court
> involves forum shopping by one of the parties;
> 11. the existence of a right to a jury trial

17

12. the presence in the proceeding of non-debtor parties; and
13. any unusual or other significant factors.

*McDaniel,* 364 B.R. at 650 (S.D. Ohio 2007) (citations omitted); *Kmart Creditor Trust,* 307 B.R at 597 (citing same 13 factors). "This is a multi-factor balancing test, not a rule in which every element must be satisfied ([as opposed to] the five-part rule . . . for mandatory abstention); not all factors need to weigh in favor of permissive abstention in order for it to be appropriate." *DeGirolamo v. Applegate (In re Applegate),* 414 B.R. 209, 216 (Bankr. N.D. Ohio 2008). "As the party moving for permissive abstention, [RPF] ha[s] the burden of establishing that abstention is appropriate under 28 U.S.C. § 1334(c)(1)." *Commercial Fin. Servs., Inc. v. Bartmann (In re Commercial Fin. Servs., Inc.),* 251 B.R. 414, 429 (Bankr. N.D. Okla. 2000) (citation omitted).

The only remaining claim to which permissive abstention may apply is the Debtor's Count III, alleging a violation of the PMPA. The Court earlier held that this claim is a non-core but "related to" claim. While "abstention from the exercise of federal jurisdiction is the exception rather than the rule," *Dayton Title Agency, Inc. v. Wright (In re Dayton Title Agency, Inc.),* 304 B.R. 323, 329 (Bankr. S.D. Ohio 2004) (citation omitted), the Court will discretionarily abstain from exercising jurisdiction over this one remaining claim for the following reasons.

First and foremost, "in the interest of justice" it is simply more efficient to refrain from exercising jurisdiction in light of the Court's decision that it either must abstain or lacks jurisdiction over all the other claims in the removed state court action. The administration of the Debtor's estate will be negatively affected if the Debtor's PMPA claim is litigated here while the parties litigate the other nine claims in state court. The parties presence here would need to be coordinated with the state court proceedings and this could potentially cause unnecessary delays in one or both forums.

A positive effect on the administration of the estate from abstaining is that the state court appears to be in a position to more quickly adjudicate the claims. According to RPF, discovery was

closed, it was ready to file a dispositive motion, and a trial date had been set for July, 2011. The Debtor contends discovery was not completed but does not refute RPF's contention that the trial date was set. These circumstances demonstrate the state court is in a better position to adjudicate the claims before this Court will be in a position to do so. In addition, "this [C]ourt will be limited to proposed findings of fact and conclusions of law, subject to objection and de novo review by the district court, all of which will delay rather than advance the ultimate resolution of the merits of all parties' positions." *Nationwide Roofing*, 130 B.R. at 780. Furthermore, the efficient administration of the Debtor's estate will not be negatively affected because there is no argument by the Debtor that the outcome of this litigation is "essential to the formulation or confirmation of a proposed plan." *Id*.

Also relevant to the "interest of justice" consideration is that while the Debtor's PMPA claim is based on federal question that provides a jurisdictional basis other than 28 U.S.C. § 1334, the federal courts do not have exclusive jurisdiction. "Although . . . the federal legislature may restrict actions arising under the federal laws to resolution in federal courts, there appear to be no such restrictions imposed to prevent adjudication of this action in" the Genesee County court. *Craig v. Loan Servicing Ctr. (In re Craig)*, 56 B.R. 479, 481 (Bankr. W.D. Mo. 1985). Moreover, the fact that all other claims will be heard by the state court is certainly an "unusual or other significant factor[]" not typically present in most abstention determinations. With factors one and thirteen weighing significantly in favor of abstention, exercising jurisdiction would not be "in the interest of justice" in these circumstances.

Second, as a non-debtor, RPF would have the right to a jury trial in state court on this claim. Courts have found that "of considerable importance [in the permissive abstention analysis] is the presence of nondebtor plaintiffs . . . in the matter being considered for abstention." *Republic*

*Reader's Serv., Inc. v. Magazine Ser. Bureau, Inc. (In re Republic Reader's Serv., Inc.)*, 81 B.R. 422, 428 (Bankr. S.D. Tex. 1987). "'[T]he right of nondebtor parties to a nonbankruptcy court forum, particularly if a jury trial right exists in a nondebtor's case, presents a compelling argument for abstention." *Best Reception Sys.*, 220 B.R. at 955 n.38 (quoting *Republic Reader's Serv., Inc.*, 81 B.R. at 428-29). Moreover, even were this Court to retain jurisdiction over this claim, it would be limited to entering proposed findings of fact and conclusions of law for the district court to review. In contrast, the state court, with concurrent jurisdiction over this federal claim, can enter a final judgment. This saves time and conserves scarce judicial resources. *Best Reception Sys.*, 220 B.R. at 955 n.27 (fact that only one state court judge, versus two federal judges, needs to be familiar with the facts of the case weighs in favor of abstention). Thus, factors 11 and 12 strongly support abstention.

Lastly, there is an apparent related proceeding presently before the Genesee County Circuit Court. RPF claims that if this Court abstains and remands this removed state court action it will seek to consolidate the action with a separate action filed against the transferee of the Pierson Road station. RPF alleges that the transferee induced the Debtor to breach the Branding Agreement at issue in these claims. It is quite likely that RPF's other state court action and this state court action will involve many of the same facts and circumstances. For example, the Pierson Road station secures one of the mortgages held by RPF, and the Branding Agreement is central to both actions. Courts have found that related proceedings for purposes of this factor can include other adversary proceedings "arising from the same transaction and potentially involving the same issues." *Antioch Co. Litigation Trust v. Hardman*, 438 B.R. 598, 611 n.13 (S.D. Ohio 2010). While the other state court action is not identical to an adversary proceeding, the Court finds it is sufficiently analogous and likely will involve the same transactions or issues. Therefore, factor four also weighs in favor

of abstention.

As to the other factors, the Court finds them either inapplicable or neutral based on the circumstances present on this record. Again, "not all factors need to weigh in favor of permissive abstention in order for it to be appropriate." *DeGirolamo,* 414 B.R. at 216. Courts permissively abstain even when only "two of the[] factors tip the scales in favor of abstaining." *In re Repurchase Corp.*, 329 B.R. 832, 836 (Bankr. N.D. Ill. 2005). Overall, the factors discussed convince the Court that the better and more sensible course to follow is to permissively abstain from exercising jurisdiction over the Debtor's PMPA claim.

**Equitable Remand**

Because the Court has determined that it has no jurisdiction over four claims, must abstain from hearing five other claims, and will permissively abstain from exercising jurisdiction over the remaining claim, the Court need not necessarily decide if equitable remand is appropriate.

However, the Court holds that it will, in the alternative, equitably remand all the claims. Section § 1452(b) of title 28 states that the Court "may remand . . . on any equitable ground." Courts have stated that "the same considerations that are relevant to the issue of abstention also bear upon the issue of remand" and, thus, "where the facts before the court mandate or compel abstention, equitable grounds for remand exist under § 1452(b) and remand of the proceeding to state court is favored." *Best Reception Sys., Inc.*, 220 B.R. at 958 (citations omitted). "The presence of factors suggesting discretionary abstention pursuant to [§] 1334(c)(1) and factors requiring mandatory abstention under [§] 1334(c)(2) provides ample equitable grounds for remand of the lawsuit to state court." *Premier Hotel Dev. Grp.*, 270 B.R. at 258 (citation omitted).

One factor courts examine when considering whether to equitably remand is whether there would be "duplicative and uneconomical effort of judicial resources in two forums[.]" *Cordes v.*

21

*Cont'l Holdings, Inc. (In re Cont'l Holdings, Inc.)*, 158 B.R. 442, 444 (Bankr. N.D. Ohio 1991). That is certainly the case here.  The fact that this Court would have to familiarize itself with the same facts surrounding the alleged mutual breach of the Branding Agreement that the state court is already familiar with is an entirely duplicative and uneconomical use of scarce judicial resources. Therefore, equitable remand is appropriate.

Accordingly, the Court remands the removed state court action in its entirety to the Genesee County Circuit Court pursuant to 28 U.S.C. § 1452(b), including the Debtor's third-party complaint.

Counsel for RPF Oil Company, Inc. is directed to prepare an order in conformity with this Opinion.

`Signed on November 01, 2011`

```
                              /s/ Daniel S. Opperman
                           Daniel S. Opperman
                           United States Bankruptcy Judge
```